**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No. 10-cv-00675-REB

CURTIS WILSON,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#1], filed March 23, 2010, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff alleges that he is disabled as a result of, *inter alia*, degenerative joint (knee) disease, blood clots, hearing loss, sleep apnea, and post-traumatic stress disorder. After his applications for disability insurance and supplemental security income benefits were denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on August 19, 2009. At the time of the hearing, plaintiff was 34 years old. He has a high school education and vocational training in automotive repair, and past relevant work experience as a construction worker, janitor, and carpenter. He has not engaged in substantial gainful activity

since January 1, 2007, his alleged date of onset.[1]

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance or supplemental security income benefits. Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. Other impairments were found to be not severe. The ALJ found that plaintiff had the residual functional capacity to perform unskilled light and sedentary work with postural, environmental, and mental limitations. Although this finding precluded plaintiff's past relevant work, the ALJ found that there were other jobs existing in significant numbers in the national and local economies that he could perform. She therefore found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley*

---

[1] After filing his applications, plaintiff amended his alleged date of onset to March 1, 2007. Nevertheless, the ALJ established onset as of the original date. (Tr. 16.)

***v. Chater,*** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f).[2]  ***See also Williams v. Bowen*** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. ***Id.*** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

---

[2] Throughout this opinion, although I cite to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits, identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

## III. LEGAL ANALYSIS

Plaintiff presents three arguments on appeal. First, he faults the ALJ for failing to explain why she did not adopt portions of the mental residual functional capacity assessment of the state agency psychiatrist. Second, he claims the ALJ erred in failing to inquire of the vocational expert regarding the consistency of his opinion with the *Dictionary of Occupational Titles* ("*DOT*"). Third, he complains of the ALJ's determination at step two of the sequential evaluation that his sleep apnea was not severe. Finding no such reversible error in the ALJ's decision, however, I affirm.

The ALJ's opinion in this matter is meticulous and thorough to a fault, and her assessment and discussion of the evidence supporting plaintiff's alleged mental impairments are no exception. (*See* Tr. 24-26.) After providing a detailed accounting of the records from

plaintiff's treating sources, the ALJ assigned them "great weight," even though the providers were not "acceptable medical sources" under the Commissioner's regulations.  ***See* Social Security Ruling** 06-03p, 2006 WL 2329939 at *3 (SSA Aug. 9, 2006).[3]  None of these sources, however, expressed an opinion in terms of work-related functionality.  The ALJ therefore turned to the to the opinion of the state agency psychiatrist, Dr. Mark Suyeishi, who reviewed records on behalf of the Commissioner and completed a Mental Residual Functional Capacity Assessment form.  Dr. Suyeishi stated that plaintiff would be moderately limited in seven of the twenty functional aspects of mental work activity contemplated by the form and not significantly limited in the remainder.  (Tr. 732-733.)  The ALJ noted that this opinion was consistent with the evidence from plaintiff's treating sources and afforded it "substantial weight."  (Tr. 26.)

Plaintiff faults the ALJ, however, for failing to mention Dr. Suyeishi's suggestion that, among his limitations, plaintiff was moderately limited in his ability to work without interruptions and perform at a consistent pace without an unreasonable number or length of rest periods.  (Tr. 733.)  That portion of the form is denominated "Summary Conclusions" and notes that a "[d]etailed explanation of the degree of limitation in each category . . . as well as any other assessment information you deem appropriate, is to be recorded in Section III (Functional Capacity Assessment)."  (Tr. 732.)  That section is described as the venue for the reviewer to "[r]ecord the elaborations on the preceding capacities sections" and "[e]xplain your summary conclusions in narrative form."  There, Dr. Suyeishi concluded that plaintiff "can perform work of

---

[3] This ruling recognizes that, given the realities of modern-day managed healthcare,

> medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.  Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

limite[d] complexity that can be learned [in] up to 3 months." (Tr. 734.)  There is nothing in the record to suggest that this assessment of plaintiff's abilities does not encapsulate whatever interruptions might be caused by plaintiff's psychologically based symptoms.  That assessment is more than adequately accounted for by the ALJ's conclusion that plaintiff could perform "routine work with uncomplicated instructions" involving limited contact with coworkers and no interaction with the general public.  (Tr. 21.)  I therefore find no reversible error in this regard.

Nor is there merit in plaintiff's suggestion that the ALJ erred by failing to question the vocational expert regarding the consistency of her opinion with the *DOT*.  Such an inquiry is required only when there is an apparent conflict between the expert's testimony and the *DOT*'s description of the requirements of the job.  **Social Security Ruling** 00-4p, 2000 WL 1898704 at *2-*3 (SSA Dec. 4, 2000); **Haddock v. Apfel**, 196 F.3d 1084, 1091 (10th Cir. 1999).  Plaintiff perceives such a conflict in that three of the five jobs suggested by the vocational expert (Tr. 64-65) require a "reasoning development level" of "3."  Under the *DOT*, a reasoning level of "3" suggests that the job requires the ability to "[d]eal with problems involving several concrete variables in or from standardized situations." *Dictionary of Occupational Titles*, Appendix C, § III, ¶ 03, **available at** http://www.occupationalinfo.org/appendxc_1.html#III (last accessed January 11, 2011).

Assuming *arguendo* that this definition differs substantially from the ALJ's conclusion that plaintiff is capable of routine work involving uncomplicated instructions, **see Scheibeler v. Astrue**, 2009 WL 3077310 at *3 (D. Colo. Sept. 21, 2009), any such error is undoubtedly harmless, **see Bernal v. Bowen**, 851 F.2d 297, 303 (10th Cir. 1988).  For even if these three jobs are eliminated from consideration, plaintiff does not suggest that the remaining two jobs, both of which had a reasoning level of "2," were beyond his mental residual functional capacity.  **See Scheibeler**, 2009 WL 3077310 at *3.  Of these two jobs, the retail marker position alone

6

accounts for 4,440 jobs in Colorado and 326,000 nationally.  (Tr. 28).[4]  Although the Tenth Circuit has eschewed a bright line rule for determining what may constitute a significant number of jobs, *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992), it has found far lesser numbers of jobs sufficient to satisfy the Commissioner's burden of proof at step five of the sequential evaluation, *see, e.g.*, *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (concluding that no reasonable fact finder could have found 11,000 jobs in the regional economy and 152,000 jobs in the national economy insufficient).  *See also Clay v. Barnhart*, 417 F.3d 922, 931 (8th Cir. 2005) (no reversible error where, despite potential inconsistency between claimant's residual functional capacity and reasoning level of jobs identified, other jobs existed in significant numbers).

Finally, I find no error in the ALJ's determination that plaintiff's sleep apnea was not a severe impairment.  The ALJ thoroughly explained her rationale for this determination, linking it to substantial evidence of record.  (Tr. 17-18.)  The only contrary evidence was plaintiff's own subjective complaints of continued daytime somnolence, which are not sufficient, standing alone, to establish the existence of a severe impairment at step two.  **Social Security Report** 96-3p, 1996 WL 374181 at *2 (SSA July 2, 1996).

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated January 12, 2011, at Denver, Colorado.

**BY THE COURT:**

*/s/ Robert E. Blackburn*
Robert E. Blackburn
United States District Judge

---

[4] The addresser job accounts for an additional 160 jobs in Colorado and 23,000 jobs nationally.